**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Amy Devine,

Plaintiff,

v.

Minnesota Mining and Manufacturing Company,

Defendant.

Civil No. 00-883 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Leslie Lienemann, Esq., Linemann Law Office, 8400 Lyndale Avenue South, Suite 7, Bloomington, MN 55420, appeared on behalf of Plaintiff.

Marianne Short, Esq. and James Kremer, Esq., Dorsey & Whitney, Pillsbury Center South, 220 South Sixth Street, Minneapolis, MN 55402, appeared on behalf of Defendant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on August 31, 2001, pursuant to Defendant's motion for summary judgment. In the Complaint, Plaintiff alleges discrimination on the basis of discrimination and failure to accommodate her disability, in violation of both the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA"). For the reasons set forth below, Defendant's motion is granted in part and denied in part.

## Background

Amy Devine originally began working for Defendant Minnesota Mining and Manufacturing Company ("3M") as an engineer in 1987. In 1993, Devine moved to the Office of Intellectual Property Counsel ("OIPC") as a patent engineer. In 1994, Devine started law school, and, in August of 1995, she was accepted as a law clerk/attorney trainee.

FILED SEP 04 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD____
DEPUTY CLERK____

As a participant in 3M's law clerk/attorney trainee program, Devine would continue to work in the OIPC while she continued her legal studies. Most participants in the program work at about 60% full-time-equivalent. Devine started the program working full-time for 3M, though she eventually dropped to the more usual part-time employment. 3M agrees to pay law school tuition for the participants in its law clerk/attorney trainee program. Although there is some question about what "rules" or "procedures" applied to Devine's participation of the program, it is agreed that most participants–absent some deficiency in performance–continue working for 3M as patent attorneys in the OIPC after graduation from law school.

In late 1995, Devine began experiencing a major depressive episode. Her counselor referred her to a psychiatrist for medication. In early 1996, Devine advised her supervisors that she was taking prescription anti-depressants; Devine asserts that she wanted her supervisors to scrutinize her work more closely because she was concerned that the medication might affect her performance.

It is undisputed that Devine's ability to perform her job declined in the face of her depression. The medication she was taking was only marginally helpful, and Devine admits that her condition affected her motivation, her ability to concentrate, and her ability to assimilate new information. However, her performance reviews following her diagnosis are equivocal. The review of Devine's work for 1996 indicated a number of areas in which she needed improvement, but ultimately summarized her performance as demonstrating a "good level of contribution for this year." Moreover, the record contains significant factual disputes regarding the amount of work being given to Devine relative to other trainees (specifically, whether 3M was burdening Devine with Herculean volumes of work, thereby setting her up to fail) and regarding how much work Devine did accomplish, how well and how timely.

Ultimately, after Devine took two leaves of absence (one unpaid under the Family and Medical Leave Act and one paid under her disability policy), 3M determined that it would not offer Devine a permanent position as a patent attorney in the OIPC. Instead, during her last leave, 3M notified Devine that her clerkship position was being terminated in light of the decision not to hire her as an attorney. 3M offered Devine three months of continued employment, consistent with her physician's work restrictions (at that time, only 30% FTE), during which Devine could seek another position within 3M. Devine's original position within the OIPC, as a patent engineer, was unavailable. Devine could not find another position within the 3M system, and she was terminated.

**Discussion**

**1. Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a

genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. Failure to Accommodate Claims**

Devine asserts that 3M failed to provide her with a reasonable accommodation of her disability as required by the ADA and the MHRA. Specifically, Devine alleges that 3M failed to accommodate work restrictions imposed by her physician (to work at 30% FTE for a period of roughly six months and to take frequent breaks).[1]

Devine's failure to accommodate claims fail because there is no evidence that 3M actually failed to provide these accommodations. Rather, 3M had determined that, unless Devine could find a placement elsewhere within their organization, Devine would be terminated. From the time that Devine made the accommodation request until she ceased working for 3M, Devine did not actually perform any work at all. Instead, she was considered to be working while she sought another position.

Moreover, the letter outlining the provisions for Devine's job search specifically state that she would return to "work" for that purpose "in accordance with [her] current medical

---

[1] Devine also makes a vague allegation that 3M had a duty to accommodate her disability, after deciding that she could not perform the job of patent attorney, by retaining her on indefinite leave until a position for which she was qualified opened up (specifically, a position for an engineer in some division of 3M other than OIPC which would allow Devine to work to her doctor's limitations). The ADA does not impose upon employers an obligation to retain employees on disability leave indefinitely until an "accommodating" position be obtained. *See Boykin v. ATC/VanCom of Colorado, L.P.*, 247 F.3d 1061 (10th Cir. 2001).

restrictions." Aff. of James Kremer, Ex. 18. There is no evidence that 3M required Devine to spend more time than that at the office.

In short, Devine's request for accommodation occurred after she was, for all intents and purposes, fired. 3M did not provide her with work on a 30% FTE basis after that request because 3M had ceased providing her with work at all. Devine's "failure to accommodate" claims are entirely confounded with her disability discrimination claims and cannot, on their own, survive.

**3. Disability Discrimination Claims**

3M asserts that Devine's disability discrimination claims fail as a matter of law because she admits that her condition impaired her ability to perform the essential functions of the job of patent attorney: concentrating, focusing, and assimilating new information. Devine seems to contend that those admissions are irrelevant to the discrimination claims because only 3M's perception of Devine's abilities have any significance.

Devine's admissions about her limitations are neither irrelevant (as Devine asserts) nor dispositive (as 3M asserts). It may be that Devine's own characterization of her abilities is relevant to the issue of whether she was qualified to work as an attorney, but that evidence must be evaluated in light of the evidence that she *was* working as an attorney and her employers, reviewing her work, found it to be on whole acceptable.

3M further argues that the record firmly supports their proffered legitimate nondiscriminatory reason for terminating Devine: she was not performing up to legitimate expectations. However, the evidence suggesting that 3M was imposing significantly more work on Devine than on other similarly situated employees, calls into question whether their expectations of her were legitimate. Similarly, the fact that contemporaneous evaluations of Devine's work, while not glowing, did not reflect a grave deficiency–at least, not a deficiency

more grave than other employees who were not terminated–raises a question of fact regarding whether the proffered reason is merely pretextual.

3M relies heavily on the case of *Mole v. Buckhorn Rubber Products, Inc.*, 165 F.3d 1212 (8th Cir. 1999). In *Mole*, the plaintiff suffered from multiple sclerosis and depression; she was terminated, according to her employers, for poor performance. In affirming the district court's grant of summary judgment in favor of the employer, the Eighth Circuit concluded that the plaintiff had not met her *prima facie* burden because she had not offered evidence that she was qualified for her position, with or without accommodation. On that point, Devine's case is readily distinguishable from Mole's. In *Mole*, the plaintiff's poor work performance was documented long before she was diagnosed with MS or depression; to the extent that 3M ever documented deficiencies in Devine's performance, it did so after it was made aware of her depression. Moreover, the performance evaluations on which 3M relies are far more equivocal than those described by the court in *Mole*. The record before this Court raises genuine issues of material fact regarding whether Devine really was incompetent to perform her job, whether as a result of her depression or otherwise.

In *Mole*, the Eighth Circuit went on to note that the plaintiff had offered no evidence that her employer's explanation for her termination–poor work performance–was merely pretextual. In contrast, Devine has offered evidence suggesting that 3M was heaping work upon her, assigning her far more than it was assigning even more advanced employees, essentially setting her up to fail. The Court finds that a reasonable fact-finder could conclude that 3M was purposefully creating a record to cover intentional discrimination.

In short, the record raises sufficient issues of material fact to preclude summary judgment on Devine's disability discrimination claims. However, the Court would be remiss if it did not

note that Devine's prospects of succeeding before a jury would appear, on the record before the Court, to be tenuous at best. At the same time, the record indicates that Devine may have been treated shabbily, if not illegally. The Court urges the parties to consider resolving this dispute in an amicable manner, without resorting to the "all or nothing" authority of a jury.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. No. 34) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. The motion is **GRANTED** as to Plaintiff's claims for failure to accommodate (Counts Three and Four), and those claims are **DISMISSED WITH PREJUDICE**.

   b. The motion is **DENIED** as to Plaintiff's claims for disability discrimination (Counts One and Two).

2. Defendant's Motion in Limine (Doc. No. 42) is **DENIED AS MOOT** in light of Plaintiff's agreement to withdraw the deposition testimony at issue.

Dated: September 4, 2001

DONOVAN W. FRANK
Judge of United States District Court

# Please forward this announcement to the recipient of this fax.

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500